# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

KYLE FINNELL,

|                   |   |                               |
|-------------------|---|-------------------------------|
| Petitioner,       | : | Case No. 1:17-cv-268          |
| - vs -            |   | District Judge Douglas R. Cole |
|                   |   | Magistrate Judge Michael R. Merz |
| TIM SCHWEITZER, Warden, |   |                          |
| Lebanon Correctional Institution, | : |                 |
| Respondent.       |   |                               |

## REPORT AND RECOMMENDATIONS

This is a habeas corpus case brought *pro se* by Petitioner Kyle Finnell to obtain relief from his July 1, 2014, convictions in the Hamilton County Court of Common Pleas in that court's cases B-1305265-B and B-1306715 (Petition, ECF No. 7, PageID 46).

**Litigation History**

On September 13, 2013, the Hamilton County grand jury indicted Finnell and his co-defendant Shawn Johnson for a home invasion occurring in June 2012. The grand jury charged them with one count of aggravated burglary in violation of Ohio Rev. Code § 2911.12(A)(1) (count 1), one count of burglary in violation of Ohio Rev. Code § 2911.12(A)(2) (count 2), one count of aggravated robbery in violation of Ohio Rev. Code § 2911.01(A)(1) (count 3), one count of robbery in violation of Ohio Rev. Code § 2911.02(A)(2) (count 4) and one count of kidnapping in violation of Ohio Rev. Code § 2905.01(A)(2) (count 5). Counts 1 and 3 each carried two firearm specifications. In count eleven,

1

Finnell alone was charged with one count of having weapons while under disability in violation of Ohio Rev. Code § 2923.13(A)(2) (count 11). Counts 6-10 related exclusively to Johnson and involved drug and tampering with evidence offenses occurring in August 2013. (Indictment in Case No. B-1305265 State Court Record, ECF No. 11, Ex.1).

The grand jury subsequently indicted Finnell for one count of intimidation of a crime witness in violation of Ohio Rev. Code § 2921.04(B)(1) with two firearm specifications (count 1), one count of having weapons while under disability in violation of Ohio Rev. Code § 2923.13(A)(2) (count 2) and one count of receiving stolen property in violation of Ohio Rev. Code § 2913.51(A) (count 3). (Indictment in Case No. B-1306715, State Court Record, ECF No. 11, Ex. 2). These charges arose from Finnell's attempt to intimidate the state's main witness in the robbery/burglary case after his arrest.  A trial jury found Finnell guilty of all charges and specifications.  He was sentenced to an aggregate term of imprisonment of thirty-four years.

Finnell appealed to the Ohio First District Court of Appeals which affirmed the convictions, remanded for incorporation of the consecutive sentencing findings into the sentencing entries, and vacated the denial of Finnell's new trial motion because it had been ruled on by a judge who had recused himself.  *State v. Finnell*, 2015-Ohio-4842, ¶ 77 (1st Dist. Nov. 25, 2015)("*Finnell I*"), appellate jurisdiction declined, 145 Ohio St. 3d 1445 (2016).

As to the new trial motion, the trial court denied release of juror information and Finnell appealed with the assistance of the Ohio Public Defender.  After Finnell filed his habeas corpus petition in this Court, the First District reversed the trial court's denial of the release of juror information on ineffective assistance of trial counsel grounds.  *State v. Finnell*, 2018-Ohio-564 (1st Dist. Feb. 14, 2018)("*Finnell II*").  The remanded new trial proceedings remain pending in the Hamilton County Court of Common Pleas.

The Habeas Corpus Petition was filed in this Court on June 22, 2017. *Id.* On Order of Magistrate Judge Karen Litkovitz (ECF No. 6), Respondent filed the State Court Record (ECF No. 11) and a Return of Writ (ECF No. 12).  The same Order set a date for Finnell to file his reply of twenty-one days after the Return was filed (ECF No. 6, PageID 44-45).  Because the Return was served by mail on October 19, 2017 (ECF No. 12, PageID 1492), Finnell's time was extended to twenty-four days by operation of Fed.R.Civ.P. 6.  Therefore his reply deadline was November 13, 2017.  On November 4, 2017, he filed a motion for the Court to set a reply date (ECF No. 13).  That motion was moot because a reply deadline had already been set.  Nevertheless, Finnell has never filed a reply.

On June 12, 2018, the Magistrate Judge reference in the case was transferred to the undersigned to help balance the Magistrate Judge workload in the District (Transfer Order, ECF No. 18).  The undersigned then ruled on all the pending motions, finding the motion to set a reply deadline moot, denying Finnell's Motion to Expand the record, but granting his Motion to Hold this case in abeyance pending completion of proceedings on his motion for new trial in the trial court  (ECF No. 19).  Because the First District Court of Appeals had reversed, on ineffective assistance of trial counsel grounds, the trial court's denial of the juror misconduct claim, the Magistrate Judge stated he anticipated a prompt decision of that claim and an amendment of the Petition to litigate that claim in this case. *Id.*

The Common Pleas case remained in that posture for more than two years.  Apparently the new trial motion has yet to be decided.  In any event, Finnell has never moved to amend his Petition to add a juror misconduct claim.  On January 19, 2021, the Magistrate Judge dissolved the stay of proceedings, concluding this case no longer met the criteria for stay adopted by the Supreme Court

in *Rhines v. Weber*, 544 U.S. 269 (2005), and indicated he would file a report based on the present record (ECF No. 57). This Report follows.

The Petition pleads the following grounds for relief:

> **Ground One**: Whether the trial court erred as a matter of law by allowing hearsay and other-acts evidence in violation of his right to a fair and impartial trial. Pursuant to Sixth Amendment and Due Process Clause of the Fourteenth Amendment.

> **Ground Two:** Whether the evidence was insufficient as a matter of law and/or against the manifest weight of the evidence to sustain a conviction. The Due Process Clause of the Fourteenth Amendment protected a criminal defendant.

> **Ground Three:** Whether appellant was denied effective assistance of counsel in violations of his constitutional rights thus prejudicing his right to a fair trial. Pursuant to the Sixth Amendment and Due Process clause of the Fourteenth Amendment.

> **Ground Four**[1]: whether the trial court erred as a matter of Law in sentencing petitioner. In violation of Due Process Clause of the Fourteenth Amendment.

(Petition, ECF No. 7, PageID 60, 63, 66, and 69).

# Analysis

## Ground One: Admission of Hearsay and Other Bad Acts Evidence

In his First Ground for Relief, Finnell complains that hearsay and "other bad acts" evidence were improperly admitted against him at trial. He begins in the Petition by claiming that the Ohio

---

[1] Labeled as a second Ground Three by Petitioner.

Rules of Evidence govern trials in the Ohio courts and that failure to abide by them subjects a defendant to deprivation of constitutional due process.

There is a serious error in this premise because not all failures to follow state procedural rules rise to the level of constitutional deprivations.  "A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable."  *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993).  Furthermore, because habeas corpus is only available to correct federal constitutional violations, this Court cannot review state court rulings on issues of state law.  28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983).

Finnell describes the problematic testimony as follows:

> ln this case at point Murray[2] testified using the pronoun "they" on several occasions stating "they" told her if she didn't help them rob Mr. Underwood, "they" would kill her. However, she did not specify who "they" actually said this. Appellant or "Flop". Further on she states "Flop" had threatened to kill her children so its' [sic] logical, if not emphatically practical, she was referring to "Flop" in her earlier testimony. Murray then testifies " they" inference to "Chiko" and "Flop", were dangerous because she heard stories about their past.

(Petition, ECF No. 7, PageID 62).

Finnell submitted this claim as his First Assignment of Error on his first appeal and the First District decided it as follows:

> [*P26]  In his first assignment of error, Finnell contends that the trial court erred by admitting hearsay and other-acts evidence in violation of his right to a fair and impartial trial. Both of these issues involve Murray's testimony concerning how she became involved in the burglary and attack on Underwood. Finnell did not object to the

---

[2] Money Murray was an unindicted co-conspirator as to the home invasion offenses and later the victim of the witness intimidation offenses.

admission of this testimony at trial. Therefore, we review only for plain error.

[*P27] We may reverse under a plain-error standard only where the defendant can demonstrate that "but for the error, the outcome of the trial clearly would have been otherwise." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id. at paragraph three of the syllabus.

[*P28] Hearsay Evidence. Finnell first argues that impermissible hearsay evidence was admitted when Murray testified that "they" had threatened to kill her if she did not help with the robbery, and she failed to identify who made the statement.

[*P29] "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(A). Hearsay evidence is generally inadmissible to prove or disprove facts relevant to material issues in a case. See Evid.R. 802. A statement is not considered to be hearsay under certain circumstances, including where it is offered against a party and is the party's own statement. Evid.R. 801(D)(2)(a).

[*P30] Here, Murray's statement that "they" had threatened to kill her was not hearsay; she clarified during her testimony that "they" included Finnell, a party to the case. Because the statement fell into the definition of nonhearsay as set forth in Evid.R. 801(D)(2)(a), it was not inadmissible hearsay.

[*P31] Finnell also argues that Murray's statement that she had heard stories about Finnell's "dangerous past" was also inadmissible hearsay. An out-of-court statement that is not offered for its truth, but instead is offered for its effect on the listener, is not hearsay. See Evid.R. 801(C); *State v. Thomas,* 61 Ohio St.2d 223, 232, 400 N.E.2d 401 (1980). Murray's testimony about the stories was offered for this limited purpose. Finnell did not object nor request a limiting instruction.

[*P32] The admission of the statement without an instruction did not result in a manifest injustice in light of the other evidence in this case demonstrating Finnell's guilt. Moreover, the jury was informed of Finnell's prior involvement in an aggravated robbery by Finnell's

own stipulation. Under these circumstances, Finnell has failed to demonstrate plain error.

[*P33]  Other-Acts Evidence. Finnell contends that Murray's testimony that he was dangerous and that she had heard stories about his past was "other acts" evidence inadmissible under Evid.R. 404(B). This rule prohibits evidence of "other crimes, wrongs, or acts * * * to prove the character of a person in order to show action in conformity therewith."

[*P34]  Murray's testimony, however, did not serve as evidence of other crimes, wrongs, or acts; at best, it could be categorized as general character evidence. This type of evidence is usually not admissible to prove the conforming conduct of [**14] the accused. Evid.R. 404(A). But Murray's testimony was not offered for this purpose; it was offered to show why Murray cooperated with Finnell. Finnell did not object or request a limiting instruction, and he cannot demonstrate plain error. See Long, 53 Ohio St.2d 91, 372 N.E.2d 804, at paragraphs two and three of the syllabus.

[*P35]  Accordingly, we overrule the first assignment of error.

*Finnell I.*

In part the First District decided that the admission of the evidence did not violate Ohio evidence law.  That is a state law question on which this Court is bound by the First District's decision.  *Bradshaw v. Richey*, 546 U.S. 74 (2005).  There is no general federal constitutional prohibition on admission of hearsay evidence except under the Confrontation Clause.[3]  Likewise, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence."  *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003), noting that the Supreme Court refused to reach the issue in *Estelle v. McGuire*. 502 U.S. 62 (1991).

Respondent also argues relief on Ground One is barred by Finnell's procedural default in presenting it in that his trial attorney did not object.  Finnell seeks to excuse this default by blaming

---

[3] The Confrontation Clause is not involved here because Ms. Murray testified live at trial and was subject to cross-examination.

it on ineffective assistance of trial counsel.  But the First District's holding that the evidence was admissible implies that there was no deficient performance in failing to object to its admission. And while the First District did proceed to consider the evidence under a plain error standard, plain error review constitutes enforcement of a procedural default rather than its forgiveness. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle*, 271 F.3d 239 (6th Cir. 2001).

Ground One is both procedurally defaulted and without merit.  It should be dismissed on both those bases.


**Ground Two:  Sufficiency and Weight of the Evidence**


In his second Ground for Relief, Finnell claims his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence.

A weight of the evidence claim is not a federal constitutional claim.  *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986).  Hence the weight of the evidence portion of Ground Two is not cognizable in habeas corpus and will not be considered further in this Report.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc).  In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt.  *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson*) This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* (quoting *Jackson*, 443 U.S. at 324). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate

court's sufficiency determination as long as it is not unreasonable.
See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus

case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to

the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*,

541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc);

*Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based

upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656

(6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal
> habeas proceedings because they are subject to two layers of judicial
> deference. First, on direct appeal, "it is the responsibility of the jury
> -- not the court -- to decide what conclusions should be drawn from
> evidence admitted at trial. A reviewing court may set aside the jury's
> verdict on the ground of insufficient evidence only if no rational trier
> of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.
> S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam).
> And second, on habeas review, "a federal court may not overturn a
> state court decision rejecting a sufficiency of the evidence challenge
> simply because the federal court disagrees with the state court. The
> federal court instead may do so only if the state court decision was
> 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S.
> ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43

(2012) (per curiam). The federal courts do not make credibility determinations in reviewing

sufficiency of the evidence claims. *Brooks v. Tennessee,* 626 F.3d 878, 887 (6th Cir. 2010).

Finnell presented his Second Ground for Relief as his Second Assignment of Error on

direct appeal and the First District decided it as follows:

### B. Sufficiency and Manifest Weight of the Evidence

10

[\*P36]  In his second assignment of error, Finnell challenges the sufficiency and manifest weight of the evidence to support his convictions.

[\*P37]  He first argues that the state failed to prove beyond a reasonable doubt that he was the perpetrator of the aggravated burglary, kidnapping, and weapons-under-a-disability charges related to the June 2012 incident. He claims that there was no physical evidence linking him to the crimes such as DNA or fingerprint evidence, Underwood was unable to identify him, and Murray was not a credible witness where she admitted that she had lied to the police about her involvement, some of her testimony conflicted with Underwood's, and she was testifying against Finnell as part a plea bargain.

[\*P38]  But we are not persuaded. Murray's testimony was corroborated by her cell phone records, which demonstrated that she had contact with Underwood and Finnell at the times consistent with her testimony. And although Underwood was unable to identify Finnell as his assailant, because his assailant was wearing a mask, Underwood did testify that Finnell's body type was consistent with that of one of his assailants. Ultimately, this evidence was such that any reasonable trier of fact could have found Finnell guilty beyond a reasonable doubt. See *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

[\*P39]  We also reject Finnell's argument that his intimidation conviction was not based on sufficient evidence. Murray testified that Finnell had approached her at the barbershop on September 28, 2013, and threatened her in reference to his arrest based on the June 2012 offense. Finnell's presence at the barbershop on that date was confirmed by his own witness, an employee of the shop. We conclude, therefore, that the state presented more than sufficient evidence of this offense.

[\*P40]  Next Finnell argues that the evidence was insufficient to convict him of receiving stolen property and having a weapon under a disability. These offenses related to the stolen handgun—a .40-caliber Smith and Wesson—discovered at the time of Finnell's second arrest. He claims the state failed to produce evidence of his possession of the firearm, because the police found the firearm underneath a dresser in an apartment that did not belong to him.

[\*P41]  "Possession of stolen property for purposes of the receiving stolen property statute, R.C. 2913.51, may be constructive as well

as actual." *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus, limited in part on other grounds, *Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph one of the syllabus. The same is true with respect to the possession element of the having-weapons-under-a-disability statute, R.C. 2923.13. See *State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, 986 N.E.2d 27, P 14 (1st Dist.), citing *State v. English,* 1st Dist. Hamilton No. C-080827, 2010-Ohio-1759, P 31.

 [*P42] "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." Hankerson at syllabus. In addition to dominion and control, the individual must be consciously aware of the presence of the object. *Williams* at ¶ 15, quoting *State v. Thomas*, 1st Dist. Hamilton No. C- 020282, 2003-Ohio-1185, ¶ 9. But this consciousness, as well as dominion and control, may be proved by circumstantial evidence. *Id.*

 [*P43] Here, there was no evidence that Finnell had rented the apartment where the firearm was located, but there was evidence that it belonged to his close friend, English. Finnell was arrested in English's apartment two times, both early in the morning and under circumstances suggesting that he had spent the night there with her. And when the police entered the apartment to arrest Finnell in November 2013, Finnell was standing in the doorway of the bedroom where the firearm was recovered, and ammunition for the firearm was resting on the bed inside the room. Finnell and English were the only individuals in the apartment when the police arrived on that date.

 [*P44] Further, Finnell's comments during telephone conversations with English when he was in jail can be interpreted as referring to the .40-caliber Smith and Wesson. Based on this evidence, reasonable minds could find that Finnell had knowingly exercised dominion and control over the firearm and, therefore, that he had constructively possessed it.

 [*P45] In summary, after our review of the evidence, we conclude that Finnell's convictions were supported by sufficient evidence. And we find nothing in the record of the proceedings below to suggest that the jury, in resolving the conflicts in the evidence adduced on the charged offenses, lost its way or created such a manifest miscarriage of justice as to warrant the reversal of Finnell's convictions. See *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997 Ohio 52, 678 N.E.2d 541 (1997). We note that the weight to be given

the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Accordingly, we overrule the second assignment of error.

*Finnell I.*

The Warden defends against this claim on the merits but asserts the First District's decision was an objectively reasonable application of Jackson. The Magistrate Judge agrees. The jury was entitled to weigh Ms. Murray's testimony and consider both any inconsistencies and the fact that she was testifying as part of a plea deal. Having done so, they found her credible. Neither Finnell nor his co-defendant Johnson testified to deny what Murray said. Eyewitness testimony alone is sufficient for conviction without any physical evidence. As to the intimidation offense, a victim's testimony alone is sufficient. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008), *citing United States v. Terry*, 362 F.2d 914, 916 (6th Cir. 1966). And while the police did not find the stolen gun in Finnell's hand, the circumstantial evidence is enough to place him in constructive possession.

Because the First District's decision on this claim is not an objectively unreasonable application of *Jackson v. Virginia*, 443 U.S. 307 (1979), Ground Two should be dismissed.


**Ground Three: Ineffective Assistance of Trial Counsel**


In his Third Ground for Relief, Finnell claims he was prejudiced by two acts or omissions of his trial attorney which deprived him of effective assistance of counsel as guaranteed by the Sixth Amendment: **a)** counsel failed to obtain affidavits or subpoena the juror for the hearing on his motion for new trial and **b)** counsel failed to object to hearsay and other acts of testimony.

Finnell has already received state court relief on the first of these two claims when the First District overturned denial of the new trial motion on this basis. *Finnell II*. Therefore this portion

13

of Ground Three is moot and should be dismissed on that basis.[4]

With respect to the claim of ineffective assistance of trial counsel in failing to object to Murray's testimony in certain respects, this claim is dealt with in Ground One above. In sum, it cannot be ineffective assistance of trial counsel to fail to object to the admission of evidence which is in fact held to be admissible.

**Ground Four: Failure to Merge Allied Offenses of Similar Import**

In his Fourth Ground for Relief, Finnell claims his sentence was imposed in violation of the Due Process Clause in that certain offenses were required to be merged as allied offenses of similar import under Ohio Revised Code § 2941.25 (Petition, ECF No. 7, PageID 69).

The relevant provision of the United States Constitution is the Double Jeopardy Clause of the Fifth Amendment which was held to be applicable to the States through the Fourteenth Amendment in *Benton v. Maryland*, 395 U.S. 784, 794 (1969). The Double Jeopardy Clause affords a defendant three basic protections:

> It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

*Brown v. Ohio*, 432 U.S. 161, 165 (1977), *quoting North Carolina v. Pearce*, 395 U.S. 711, 717 (1969).

Ohio Revised Code § 2941.25 is Ohio's way of enforcing the Double Jeopardy Clause by determining what constitutes the "same offense" for multiple punishment purposes. A

---

[4] This dismissal would not preclude Finnell from raising a new claim of ineffective assistance of trial counsel if he suffers it in the current new trial proceedings.

determination by an Ohio court that two particular offenses are not allied offense of similar import is conclusive on the question of whether they are the same offense for Double Jeopardy purposes. *Jackson v. Smith*, 745 F.3d 206, 211 (6th Cir. 2014), quoting *Missouri v. Hunter*, 459 U.S. 359, 366 (1983)(internal quotation marks omitted). Ohio Rev. Code § 2941.25, and not the *Blockburger* test determines whether a person has been punished twice for the same offense under Ohio law in violation of the federal Double Jeopardy Clause. *Jackson,* 745 F.3d at 213.

The test for whether two offenses constitute the same offense for Double Jeopardy purposes is "whether each offense contains an element not contained in the other." *United States v. Dixon*, 509 U.S. 688, 696 (1993); *Blockburger v. United States*, 284 U.S. 299, 304 (1932). Where two offenses are the same for *Blockburger* purposes, multiple punishments can be imposed if the legislature clearly intended to do so. *Albernaz v. United States*, 450 U.S. 333, 344 (1981); *Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *Ohio v. Johnson*, 467 U.S. 493, 499 (1984); and *Garrett v. United States*, 471 U.S. 773, 779 (1985). *White v. Howes*, 586 F.3d 1025, 1035 (6th Cir. 2009)("The current jurisprudence allows for multiple punishment for the same offense provided the legislature has clearly indicated its intent to so provide, and recognizes no exception for necessarily included, or overlapping offenses.")

What determines whether the constitutional prohibition against multiple punishments has been violated is the state legislature's intent concerning punishment. Specifically, [w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended. *Jackson*, 763 F.3d at 211.

Finnell raised this claim as part of his Fifth Assignment of Error and the First District decided it as follows:

[*P62] **Merger of Offenses.** Finally, Finnell contends that the trial court erred by failing to merge his convictions under R.C. 2941.25, Ohio's merger statute. According to Finnell, the offenses were allied offenses of similar import, committed neither separately nor with a separate animus, and therefore, his separate convictions must be merged into one. We review the trial court's merger ruling de novo. See *State v. Williams,* 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28.

[*P63] Essentially, under R.C. 2941.25, the merger of allied offenses occurs when the same conduct of the defendant can be construed to constitute two or more allied offenses of a similar import, and this conduct shows that the offenses were not committed separately or with a separate animus.

[*P64] To determine whether allied offenses merge under R.C. 2941.25, courts must consider "three separate factors—the conduct, the animus, and the import." *State v. Ruff*, 143 Ohio St. 3d 114, 2015-Ohio-995, 34 N.E.3d 892, paragraph one of the syllabus.

[*P65] Separate convictions are permitted under R.C. 2941.25 for allied offenses if we answer affirmatively to just one of the following three questions: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with a separate animus or motivation? Id. at paragraph three of the syllabus.

[*P66] Finnell argues that the aggravated burglary and kidnapping counts merge. In relevant part R.C. 2911.11(A)(1), aggravated burglary, provides that "[n]o person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure [robbery], if * * * [t]he offender inflicts, or attempts or threatens to inflict physical harm on another."

[*P67] And R.C. 2905.01(A)(2), kidnapping, in relevant part provides that "[n]o person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person * * * [t]o facilitate the commission of any felony or flight thereafter." Because these offenses can be committed with the same conduct, we must determine whether they actually were committed with same conduct and whether the offenses must merge.

[*P68] Finnell argues that these offenses were committed with the same conduct, because the commission of the aggravated burglary

16

entailed the restraint of Underwood as contemplated by the kidnapping statute. Further, he contends that they were committed with the same animus, because there was "no substantial movement" to demonstrate a significance independent from the aggravated burglary.

[*P69]  This argument, however, is contrary to Finnell's concession in the trial court at sentencing that a separate animus existed for the offenses. Therefore, he has waived this issue. Because of this separate animus, the convictions do not merge.

[*P70]  Next, Finnell maintains that the receiving-stolen-property conviction and having-weapons-under-a-disability conviction should merge. R.C. 2913.51(A), receiving stolen property, prohibits a person from "receiv[ing], retain[ing], or dispos[ing] of the property of another—here a firearm—knowing or having reasonable cause to believe that the property has been obtained through the commission of a theft offense." R.C. 2923.13(A)(2), having weapons under a disability, prohibits a person who is under indictment or has been convicted of any felony offense of violence from knowingly acquiring, having, carrying, or using any firearm or dangerous ordnance.

[*P71]  Finnell contends that it is not only possible to commit the two offenses with the same conduct, but that the evidence shows that they were committed with the same conduct. That conduct was his possession of the stolen .40-caliber Smith and Wesson on November 6, 2013, when he was arrested for the intimidation offense while under indictment for the June 2012 offenses.

[*P72]  Merger is not proper, however, because the offenses were not of a similar import. As explained in Ruff, offenses are of dissimilar import "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." (Emphasis added.) Id. at paragraph two of the syllabus. The import of the two offenses is evinced by such factors as the harm inflicted and the punishment the legislature associated with the offenses. See *State v. Earley,* Slip Opinion No. 2015-Ohio-4615, ¶ 15 (Nov. 10, 2015); *State v. Miranda,* 138 Ohio St. 3d 184, 2014-Ohio-451, 5 N.E.3d 603, ¶ 25-26 (Lanzinger, J., concurring.)

[*P73]  The criminal wrong committed by Finnell's possession of a firearm while under a disability, in violation of R.C. 2923.13(A)(2), is different from the criminal wrong resulting from his violation of R.C. 2913.51(A), which involves Finnell's retention of the "'fruits'" of a theft offense. See *Maumee v. Geiger,* 45 Ohio St.2d 238, 241,

344 N.E.2d 133 (1976), quoting *Smith v. State*, 59 Ohio St. 350, 361, 52 N.E. 826 (1898).

[*P74]  The harm that resulted from the weapons offense was an increased risk that the weapon would be used by Finnell, who had was under an indictment at the time for a felony crime of violence. See *State v. Rice*, 69 Ohio St.2d 422, 427, 433 N.E.2d 175 (1982). The significance of the weapons offense is noticeable in the statute. The legislature chose to punish as a third-degree felony this mere act of possessing a weapon when under a disability, separate from any offense committed with the firearm. See *State v. Bates*, 1st Dist. Hamilton No. C-140033, 2015-Ohio- 116, ¶ 30 (declining to merge convictions for aggravated robbery, improper handling of a firearm, carrying a concealed weapon, and having weapons under a disability).

[*P75]  Conversely, the harm that resulted from the receipt of the stolen property offense involved the legal owner's loss of the firearm. This was independent from the harm resulting from Finnell's violation of the weapons offense. We conclude, therefore, that the offenses have a different import and were properly punished separately, notwithstanding that both offenses arose from Finnell's possession of the same firearm.

*Finnell I.*

The First District's decision here amount to a conclusion that the Ohio General Assembly did intend to allow separate punishment for each of the offenses Finnell urges should be merged. That is a question of state law on which we are bound by the First District's decision.  There was accordingly no Double Jeopardy violation in punishment Finnell separately for the offenses he asserts should have been merged.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends that the Petition herein be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

January 22, 2021.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.

## NOTICE REGARDING RECORD CITATIONS

19

The attention of all parties is called to S. D. Ohio Civ. R. 7.2(b)(5) which provides:

> (5) **Pinpoint Citations**. Except for Social Security cases, which must comply with S.D. Ohio Civ. R. 8.1(d), all filings in this Court that reference a prior filing must provide pinpoint citations to the PageID number in the prior filing being referenced, along with a brief title and the docket number (ECF No. ___ or Doc. No. ___) of the document referenced.

The Court's electronic filing system inserts in all filings hyperlinks to the place in the record which has been cited following this Rule. However, as with most computer systems, the CM/ECF program cannot read pinpoint citations which do not follow the Rule precisely. For example, the first pinpoint citation in ODRC's Reply reads "Plaintiff argues that he could not bring this action until "administrative remedies as (sic) are exhausted (sic)." (Doc. 80, PageId# 987)." The correct citation would have been Doc. No. 80, PageID 987." Because Defendant added the "#" symbol, the program failed to inset a hyperlink. Use of this software is mandated by the Judicial Conference of the United States and cannot be locally modified. **The parties are cautioned to comply precisely with S. D. Ohio Civ. R. 7.2(b)(5) in any further filings.**