**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**KYLE FINNELL,**

**Petitioner,**

**v.**

**WARDEN, LEBANON CORRECTIONAL INSTITUTION,**

**Respondent.**

**Case No. 1:17-cv-268**

**JUDGE DOUGLAS R. COLE**
**Magistrate Judge Merz**

**OPINION AND ORDER**

This is a long-running habeas corpus case brought by pro se Petitioner Kyle Finnell under 28 U.S.C. § 2254. After nearly eight years, today it meets its end, at least in this Court.

There are several pending Reports and Recommendations (R&Rs) that Magistrate Judge Merz issued in this matter.[1] (Docs. 58, 68, 268, 278). Finnell has timely objected to each of those. (Docs. 65, 66, 73, 271, 273, 274, 283, 284). Respondent Warden, Lebanon Correctional Institution, also filed an objection to the August 2024 R&R. (Doc. 272). In addition, Finnell has filed many objections to non-dispositive matters on the docket, which are all ripe for review.

For the reasons set out below, the Court **OVERRULES** Finnell's Objections to the R&Rs (Docs. 65, 66, 73, 271, 273, 274, 283, 284) and **ADOPTS** the R&Rs (Docs. 58, 268), except where they have been modified by the Supplemental R&Rs (Docs. 68,

[1] Since this is a non-capital habeas case and Finnell is seeking relief under 28 U.S.C. § 2254, the Court referred the matter to a Magistrate Judge under this Court's General Order 22-05.

278), which the Court also **ADOPTS**. (One of those modifications was a result of the Magistrate Judge agreeing with the Warden's objection relating to a certificate of appealability.) Accordingly, the Court **DISMISSES WITH PREJUDICE** Finnell's Habeas Petition (Doc. 7). Because the Court further agrees with the Magistrate Judge that reasonable jurists would not disagree with these conclusions, the Court **DENIES** Finnell a certificate of appealability and **CERTIFIES** that any appeal of this Opinion and Order would be objectively frivolous.

Additionally, the Court **OVERRULES** Finnell's flurry of objections to various non-dispositive entries (Docs. 229, 232, 233, 234, 238, 239, 258, 264, 265) because they are now moot given Finnell's claims fail on the merits.

## BACKGROUND

### A. State Court Proceedings

A grand jury in the Hamilton County, Ohio, Court of Common Pleas indicted Petitioner Finnell (along with a co-defendant) in case number B-1305265-B on September 13, 2013. (State Ct. R., Doc. 11, #85–93, 120). The indictment alleged a host of criminal violations under the Ohio Revised Code in connection with a home invasion from the prior year. (*Id.* at #86–92). The six counts in the indictment that implicate Finnell included the following: aggravated burglary (including firearm specifications), burglary, aggravated robbery (also including firearm specifications), robbery, kidnapping, and having weapons while under disability. (*Id.*). On July 1, 2014, a jury convicted Finnell on all counts and specifications in that case. (*Id.* at #120).

That same day, the jury convicted Finnell on an additional three counts from a separate indictment in case number B-1306715. (*Id.* at #94–97, 121–25). The charges in that case stemmed from Finnell's attempt to intimidate a key witness in the first case. (*Id.* at #97). For those actions, the same jury convicted Finnell of intimidation of a crime witness,[2] having weapons while under disability, and receiving stolen property. (*Id.* at #121–25). The Hamilton County Court of Common Pleas judge sentenced Finnell to an aggregate term of thirty-four years after imposing consecutive terms for the convictions in both cases. (*Id.* at #133–140).

Finnell appealed, but Ohio's First District Court of Appeals affirmed his convictions. *State v. Finnell* (*Finnell I*), 2015-Ohio-4842, ¶ 77 (1st Dist.). And the Ohio Supreme Court then declined to hear the case. *State v. Finnell*, 48 N.E.3d 583 (Ohio 2016) (Table). While affirming his convictions, the First District Court of Appeals nonetheless remanded the case so that the trial court could (1) fix a clerical error related to sentencing, and (2) reconsider Finnell's motion for a new trial (the appeals court vacated an order denying Finnell's new-trial motion because the trial judge had recused himself from deciding the motion, but then had decided the motion anyway). *Finnell I*, 2015-Ohio-4842, ¶¶ 2, 46–47, 56–59. On remand, in connection with the new-trial motion, the trial court (through a different judge) denied Finnell's motion to release juror information under seal. *See State v. Finnell* (*Finnell II*), 106

[2] The January 2021 R&R noted that the jury "found Finnell guilty of all charges and specifications." (Doc. 58, #2089). But, as the state appeals court noted, "[t]he jury found Finnell guilty on all counts and specifications in the case numbered B-1305265-B, and guilty of all counts in the case numbered B130715, but not guilty of the firearm specifications attached to the intimidation count." *State v. Finnell*, 2015-Ohio-4842, ¶ 20 (1st Dist.).

N.E.3d 285, 288 (Ohio Ct. App. 2018). But Finnell appealed again. And this time, the First District Court of Appeals reversed the trial court's decision after finding that Finnell's trial counsel was ineffective in arguing that motion. *Id.* at 289.

On remand yet again, the trial court released the juror information under seal. *See State v. Finnell* (*Finnell III*), 2023-Ohio-2563, ¶ 5 (1st Dist.). Then it held two hearings related to potential juror misconduct and Finnell's new-trial motions. *Id.* But, once again, "the trial court denied Finnell's new-trial motions, finding that, '[t]he jurors made their findings and decision [based] only on the evidence presented at [Finnell's] trial.'" *Id.* ¶ 12. Finnell appealed again, but this time the First District affirmed the trial court's decision. *Id.* ¶ 22. The court explained that because the incidents at issue did not bias the jurors, Finnell could not demonstrate that the alleged juror misconduct materially or prejudicially affected his substantial rights. *Id.* ¶¶ 17–18. In other words, the interactions about which Finnell complained did not alter the jury's determination of Finnell's guilt, which the jurors decided based only on "the evidence presented at trial." *Id.* In reaching that result, the trial court and First District relied on the jurors' testimonies at the two hearings (held in January and March of 2022[3]) where they indicated that the alleged incidents with Finnell did not change their decisional processes.[4] *Id.* ¶¶ 6, 10, 19. And given the lack

[3] These hearings took place several years after Finnell's trial. While Finnell appears to have argued on direct appeal in *Finnell III* that this lengthy gap between the trial and the evidentiary hearings at which the jurors testified "was in and of itself prejudicial," the First District Court of Appeals found that Finnell did not raise the argument in the trial court, thus forfeiting the challenge on appeal. 2023-Ohio-2563, ¶ 21.

[4] The Court notes, however, that Judge Kinsley wrote a dissenting opinion because she believed the jurors were implicitly biased by the alleged interactions and "when confronting

of prejudice, Finnell's appeal necessarily failed. *Id.* ¶ 22. The Ohio Supreme Court again declined jurisdiction, closing the long chapter on Finnell's state proceedings that inform this decision. *State v. Finnell*, 220 N.E.3d 842 (Ohio 2023) (Table).

## B. Habeas Petition

In the midst of Finnell's various state-court appeals, on April 24, 2017, he initiated this federal habeas proceeding. (Doc. 1). After some initial procedural complications,[5] Finnell filed his Petition for Writ of Habeas Corpus on June 22, 2017. (Doc. 7). It included four grounds for relief. (*Id.*). Respondent Warden, in turn, filed the State Court Record, (Doc. 11), and Return of Writ, (Doc. 12). Finnell never filed a reply. (Doc. 58, #2090); Rules Governing § 2254 Cases, Rule 5(e). Instead, he filed some long-ago-handled motions, as well as a motion to hold the case in abeyance (following *Finnell II*), (Doc. 16), which the Magistrate Judge granted in June 2018, (Doc. 19).

The history of this case since that point in time is long and arduous, but unnecessary to fully recount for present purposes. Suffice it to say, over the years, there have been stays, dissolved stays,[6] R&Rs withdrawn, R&Rs reinstated, and

---

a claim of juror misconduct, [courts] should focus on what the jurors describe about their deliberative process, not the conclusions they reach about their own fairness." *Finnell III*, 2023-Ohio-2563, ¶¶ 39–40. More on that later.

[5] Finnell initially failed to comply (but later complied) with a deficiency order. (*See* Docs. 2, 3, 6).

[6] Perhaps one of these is worth noting: On January 10, 2024, the Magistrate Judge lifted a stay on the proceedings because no party sought to delay adjudication on the merits any further, despite the fact that Finnell initiated new state-court post-conviction proceedings. (Doc. 196; *see also* Doc. 223, #5905).

many, many filings and objections from Finnell. The end result is that, as of today, Finnell has five grounds for relief that are ripe for decision on the merits:

> **Ground One**: Whether the trial court erred as a matter of law by allowing hearsay and other-acts evidence in violation of [Finnell's] right to a fair and impartial trial. Pursuant to [sic] Sixth Amendment and [sic] Due Process Clause of the Fourteenth Amendment.
>
> **Ground Two**: Whether the evidence was insufficient as a matter of law and/or against the manifest weight of the evidence to sustain a conviction. The Due Process Clause of the Fourteenth Amendment protected a [sic] criminal defendant.
>
> **Ground Three**: Whether appellant was denied effective assistance of counsel in violations [sic] of his constitutional rights thus prejudicing his right to a fair trial. Pursuant to the Sixth Amendment and Due Process [C]lause of the Fourteenth Amendment.
>
> **Ground Four**: [W]hether the trial court erred as a matter of [l]aw in sentencing petitioner. In violation of [sic] Due Process Clause of the Fourteenth Amendment.
>
> **Ground Five**: Finnell was deprived of his Sixth and Fourteenth Amendment right to trial by a fair and impartial jury by participation in deciding the case of three jurors who had contact with Finnell outside the courtroom.

(Doc. 7, #60–69; Doc. 268, #7798).

The Magistrate Judge filed his first R&R on January 25, 2021. (January 2021 R&R, Doc. 58). At that time, Finnell's Petition included only the first four grounds above. The January 2021 R&R recommends the Court dismiss all four with prejudice. (*Id.* at #2091–106). Finnell timely objected to the January 2021 R&R, which included a request to amend his Petition to add several claims. (Docs. 65, 66). The Court returned this matter to the Magistrate Judge under Federal Rule of Civil Procedure 72(b)(3) for further analysis. (Doc. 67). The Magistrate Judge then combined a Supplemental R&R (addressing the objections) with a decision denying Finnell's

request to amend his Petition. (March 2021 Supp. R&R, Doc. 68). Again, Finnell timely objected. (Doc. 73).

But the Magistrate Judge then withdrew the January 2021 R&R and March 2021 Supp. R&R to allow Finnell to amend his Petition to include the juror misconduct claim that is now Ground Five.[7] (Doc. 124, #3536; Doc. 171). The exact wording of that ground, though, came from the Magistrate Judge. That is because, despite Finnell indicating a desire to amend his Petition to include it, he would not submit a proposed amended petition. (Doc. 197, #5145). So, finally, after affording Finnell multiple opportunities to amend, the Magistrate Judge deemed Finnell's Petition amended to include the fifth ground. Moreover, he construed the ground in the manner noted above after reviewing several motions for leave to amend and the state-court record.[8] (*Id.* at #5145–46). Thereafter, as the Magistrate Judge ordered, Respondent Warden filed a Supplemental Return of Writ, (Doc. 227), and additional state-court records (Docs. 226, 255). But, again, Finnell failed to file a reply. (Doc. 268, #7801–02; *see also* Doc. 197, #5147 (affording Finnell an opportunity to reply); Doc. 230 (extending the filing deadline)). Accordingly, the Magistrate Judge determined that case was ripe for decision (regarding the fifth ground for relief) and that Finnell forfeited his right to file a traverse. (Doc. 267).

[7] Despite withdrawing the two R&Rs, the Magistrate Judge later reinstated the recommendations related to Finnell's first four grounds for relief. (Doc. 167, #4164; Doc. 268, #7798).

[8] The Magistrate Judge later denied Finnell's dilatory and out-of-time motion to amend. (*See* Docs. 279, 282).

The Magistrate Judge issued an additional R&R on August 6, 2024, readopting by reference his recommendations as to the first four grounds and further recommending the Court dismiss Finnell's fifth ground for relief with prejudice, thereby dismissing his entire Petition. (August 2024 R&R, Doc. 268, #7802–14). This time around, Finnell filed several objections. (Docs. 271, 273, 274). Respondent Warden also filed an objection.[9] (Doc. 272). In response to Finnell's three sets of objections to the August 2024 R&R (and the many other objections he has filed throughout this case), the Court found that Finnell had fully exercised his right to object, prohibited him from filing further objections to the R&R, and, for a second time, returned this matter to the Magistrate Judge for further analysis. (Doc. 275).

The Magistrate Judge then issued a Supplemental R&R addressing those objections (which largely consisted of mere re-argument, general objections, or indecipherable text), but his recommendation on the merits remained the same.[10] (November 2024 Supp. R&R, Doc. 278). With that, Finnell's entire Petition—all five grounds for relief—is now ripe for the Court's review.

[9] Respondent objected to the Magistrate Judge's recommendation that the Court grant Finnell a certificate of appealability on his juror misconduct claim. (Doc. 268, #7814; Doc. 272, #8019). On reconsideration, the Magistrate Judge agreed and altered his recommendation accordingly. (*See* Doc. 278, #8235–37).

[10] Although the Magistrate Judge altered his recommendation regarding a certificate of appealability. *See supra* note 9.

## LEGAL STANDARD

### A. Objections to Dispositive Matters

Under Federal Rule of Civil Procedure 72(b)(3), for dispositive matters "district courts review an R&R de novo after a party files a timely objection." *Bates v. Ohio Dep't of Rehab. & Corr.*, No. 1:22-cv-337, 2023 WL 4348835, at *1 (S.D. Ohio July 5, 2023). But that review extends only to "any portion to which a proper objection was made." *Id.* (citation omitted). In response to such an objection, "the district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.* (cleaned up) (quoting Fed. R. Civ. P. 72(b)(3)). A "proper" objection, however, means a specific one. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). If a party makes only a general objection—one which fails to set forth the grounds with any specificity—that "has the same effect[] as would a failure to object." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). In other words, a litigant must identify, with sufficient clarity, each issue in the report and recommendation to which he objects, or else the litigant forfeits the Court's de novo review of the issue. *Miller*, 50 F.3d at 380 ("The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious.").

That said, the Court also notes that a pro se litigant's pleadings, like Finnell's Petition and his objections, are to be construed liberally and are subject to less stringent standards than formal pleadings filed by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Franklin v.* Rose, 765 F.2d 82, 84–85 (6th Cir. 1985). Even so, pro se litigants still must comply with the procedural rules that govern civil cases.

*McNeil v. United States*, 508 U.S. 106, 113 (1993). And "[t]he liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citation omitted).

For unobjected portions of the R&R, "the advisory committee notes to Federal Rule of Civil Procedure 72(b) suggest that the Court still must 'satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Redmon v. Noel*, No. 1:21-cv-445, 2021 WL 4771259, at *1 (S.D. Ohio Oct. 13, 2021) (collecting cases).

### B. Objections to Non-Dispositive Matters

There are also various objections to non-dispositive matters here. As to those, the Court "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A) (permitting judges to designate to magistrate judges any pretrial matter not excepted by the statute and to reconsider any decision on these pretrial matters under a "clearly erroneous or contrary to law" standard). "The 'clearly erroneous' standard applies to factual findings and the 'contrary to law' standard applies to legal conclusions." *Simms v. Warden*, No. 2:22-cv-474, 2024 WL 4783911, at *1 (S.D. Ohio Nov. 14, 2024). As to the former, factual findings are clearly erroneous if the Court has a "definite and firm conviction" that a magistrate judge has erred. *Id.* As to the latter, legal conclusions are "'contrary to law' when the magistrate judge has 'misinterpreted or misapplied applicable law.'" *Id.* (citations

omitted). Either approach affords the magistrate judge wide discretion and the Court will reverse a magistrate judge's order only if that discretion is abused. *Bonasera v. Pa. Nat'l Mut. Cas. Ins. Co.*, No. 2:19-cv-3817, 2021 WL 1785618, *1 (S.D. Ohio May 5, 2021).

**LAW AND ANALYSIS**

For Finnell to succeed in a federal habeas challenge to a state conviction, he "must show that 'law and justice require relief.'" *White v. Plappert*, __ F.4th __, 2025 WL 815203, at *5 (6th Cir. 2025) (quoting *Brown v. Davenport*, 596 U.S. 118, 134 (2022) (in turn citing 28 U.S.C. § 2243)). In regard to the law prong, which is the only prong the Court addresses in this Opinion and Order, that showing is no easy task. As a state convict, Finnell must overcome the Antiterrorism and Effective Death Penalty Act of 1996's (AEDPA) relitigation bar. And to do that, "a habeas petitioner like [Finnell] must show the state court's last reasoned decision is either 'contrary to' or an 'unreasonable application of' clearly established Supreme Court precedent."[11] *Id.*; *see also Williams v. Taylor*, 529 U.S. 362, 405–08 (2000) (explaining the independent meanings of 28 U.S.C. § 2254(d)(1)'s two operative phrases). Finnell cannot make this necessary showing on any of his claims, so the Court agrees with the Magistrate Judge's recommendation to dismiss his Petition.

[11] Here, the state court's last reasoned decision is *Finnell I*, 2015-Ohio-4842 for the first four grounds and *Finnell III*, 2023-Ohio-2563 for the fifth ground.

### A. January 2021 R&R and March 2021 Supplemental R&R: First Four Grounds

#### 1. Ground One: Hearsay and Other-Acts Evidence

Finnell claims that the state trial court improperly allowed the jury to hear hearsay and other-acts evidence when one of the state's key witnesses testified. (Doc. 7, #60–63). He focuses on two pieces of testimony that revolve around the witness's use of the pronoun "they": (1) the witness testified that "they" threatened to kill her if she did not assist with the home invasion at the center of case B-1305265-B, and (2) the witness testified that she knew "they" "were dangerous because she heard stories about their past." (*Id.* at #62; *see* Doc. 11-4, #882–83[12]).

To understand why Finnell deems these references to "they" important, a little context is necessary. According to the witness, at the time the threat was uttered to her, both Finnell and another were present.[13] (Doc. 11-4, #882). And, Finnell says, the witness does not make clear which one of the two allegedly issued the threat. (Doc. 7, #62). That matters as to the witness's first statement, he says, because the state was relying on an admission theory to avoid hearsay problems, and if it was the other person who said it, then it was not *Finnell's* admission (and thus, he argues, would be hearsay if used against him). (*See id.*). And as to the witness's second statement, Finnell argues both that it was hearsay (and thus subject to the same

[12] In the witness's testimony, "Chico" is Finnell, while "Flop" is Dominic Hall. *Finnell I*, 2015-Ohio-4842, ¶ 3; (Doc. 11-4, #878–79).

[13] The other person was Dominic Hall. *See supra* note 12. Hall died while Finnell's case was being investigated. *Finnell I*, 2015-Ohio-4842, ¶ 10.

problem as the first statement) and that an ambiguous reference to "their past" threatens to paint him with a broad brush based on past bad acts. (*See id.*).

Finnell submitted this same claim as his First Assignment of Error in his first state appeal (*Finnell I*). (Doc. 11, #160–62). But because "Finnell did not object to the admission of this testimony at trial," the First District Court of Appeals reviewed the claim under a plain error standard. *Finnell I*, 2015-Ohio-4842, ¶ 26. Finnell, for his part, concedes that his counsel failed to object.[14] (Doc. 7, #62). Regardless, the state appeals court held that neither piece of testimony was hearsay. It said that the testimony regarding the threat to kill was not hearsay because it was a party-opponent statement under Ohio Evidence Rule 801(D)(2)(a).[15] *Finnell I*, 2015-Ohio-4842, ¶¶ 29–30. As for the statement about Finnell's alleged past, the court found that it was not hearsay since it wasn't offered for the truth of the matter asserted, but rather "for its effect on the listener." *Id.* ¶ 31. And as for the argument based on it constituting other-acts evidence, the state appeals court found that the second statement "did not serve as evidence of other crimes, wrongs, or acts" under Ohio

[14] Finnell further argues that failure to object shows that his counsel was ineffective. That claim, however, is addressed below.

[15] Moreover, the First District Court of Appeals also found that the witness "clarified during her testimony that 'they' included Finnell." *Finnell I*, 2015-Ohio-4842, ¶ 30; (*see also* Doc. 11-5, #994). While the Court expresses some curiosity over whether, under the Federal Rule of Evidence 801(d)(2)(A), a federal court may need to parse which of two individuals involved in a conversation with another actually made the statement in order to be considered nonhearsay, a "state rule's mere nonconformity with its federal analogue should not be per se troublesome." *Olson v. Little*, 604 Fed. Appx. 387 (6th Cir. 2015). Further, on the facts here, the statements would almost certainly be considered nonhearsay under Federal Rule of Evidence 801(d)(2)(B) as an adoptive admission. *See Neuman v. Rivers*, 125 F.3d 315, 320 (6th Cir. 1997). The state analogue to that rule also served as another potential grounds for admissibility (but again, since Finnell never objected during the witness's testimony, the issue was unexplored at trial). Ohio Evid. R. 801(D)(2)(b).

Evidence Rule 404(A), but rather was offered to show why the witness complied with Finnell's demands. *Id.* ¶ 34. In short, the state appeals court found Finnell's arguments meritless. *Id.* ¶ 35.

In line with state appeals court's determination, the January 2021 R&R recommends dismissing Finnell's first ground for relief because it "is both procedurally defaulted and without merit." (Doc. 58, #2095). The Court agrees with the latter and thus need not decide the former.[16]

To start, in federal habeas, the Court is "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Wilson v. Sheldon*, 874 F.3d 470, 477 (6th Cir. 2017) (quotation omitted). As this Court has previously remarked, "[i]t is hornbook law that federal habeas relief cannot be granted for state court violations of purely state law." *Savage v. Warden, Pickaway Corr. Inst.*, No. 1:21-cv-33, 2022 WL 4357465, at *13 (S.D. Ohio Sept. 20, 2022); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). And a state court's interpretation of state evidentiary rules "fit[s] squarely in the province of state, and not federal, law."

[16] The doctrine of procedural default is "designed to offer state courts a 'fair opportunity' to consider a claim before a federal court will intervene." *Savage*, 2022 WL 4357465, at *10 (quotations omitted). While Finnell did not object to the witness's testimony at trial, the First District Court of Appeals still considered his hearsay and other-acts arguments for plain error. *Finnell I*, 2015-Ohio-4842, ¶¶ 26–35. As the Magistrate Judge correctly pointed out, though, (Doc. 58, #2095), a state appeals court's "plain-error review is not considered a review on the merits, [so Finnell] procedurally defaulted on this claim if no exception is applicable." *Jells v. Mitchell*, 538 F.3d 478, 511 (6th Cir. 2012). Be that as it may, because Finnell's claim fails on the merits, the Court need not, and does not, analyze whether any exceptions may apply.

*Savage*, 2022 WL 4357465, at *13; *see also Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983) (explaining that "the Due Process Clause does not permit the federal courts to engage in a finely-tuned review of the wisdom of state evidentiary rules"). So, a federal habeas court can grant relief on a "state court evidentiary ruling … only if it [is] so fundamentally unfair as to violate the petitioner's due process rights." *Wilson*, 874 F.3d at 475; *see also Savage*, 2022 WL 4357465, at *13 ("A state evidentiary rule will only raise federal constitutional Due Process concerns if the rule 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" (quoting *Patterson v. New York*, 432 U.S. 197, 201–02 (1977)). Of course, there are some exceptions to that general rule. For example, admitting hearsay evidence can give rise to Confrontation Clause concerns. *See, e.g.*, *Rapoza v. Horton*, No. 2:20-cv-91, 2022 WL 2747447, at *5 (W.D. Mich. July 14, 2022). But, importantly, Finnell did not couch his challenges to the evidence at issue in Confrontation Clause terms, whether in his direct appeal in state court or here.[17]

[17] Any effort to recharacterize this ground as a Confrontation Clause challenge faces other problems, as well. First, under the party presentation principle, it is the parties, not the Court, who frame the issues. Here, beyond an ambiguous passing reference to "due process" in the first sentence of this ground, (Doc. 7, #60), Finnell makes no reference to the Constitution, and certainly not to the Confrontation Clause. Second, as noted, he did not present the issue to the state court that way, giving rise to exhaustion concerns. Third, even if the Court ignored all that and proceeded to the merits, the Confrontation Clause applies only to testimonial hearsay, *Davis v. Washington*, 547 U.S. 813, 823–24 (2006), and bars statements only when the primary purpose of the declarant was to create an out-of-court substitute for trial testimony, *Michigan v. Bryant*, 562 U.S. 344, 358 (2011). The statements at issue here were not testimonial. Whether "Chico" or "Flop," (*see* Doc. 11-4, #882–83), actually made the threat to the witness, neither made the statements with an intention to create an out-of-court substitute for trial testimony. So the Confrontation Clause does not apply here. Fourth, even were that not the case, adoptive admissions are treated as statements by the defendant himself, obviating any Confrontation Clause concerns. *See supra* note 15.

That is a problem. An alleged misapplication of state evidentiary rules, absent more, does not give rise to a due process claim. *See, e.g.*, *Desai v. Booker*, 732 F.3d 628, 630 (6th Cir. 2013) ("The first and most conspicuous failing in [the] petition is the absence of a Supreme Court holding granting relief on his due process theory: that the admission of allegedly unreliable hearsay testimony violates the Due Process Clause."); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) ("There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence."). But that is all that Finnell offers here. He argues that the First District Court of Appeals erred in applying Ohio's rules of evidence and that this error amounts to a constitutional violation. (*See* Doc. 7, #60–63). In doing so, he identifies no fundamental unfairness in his state proceedings, nor does he otherwise explain how a federal constitutional violation occurred when the First District Court of Appeals made its evidentiary determinations on these grounds. That doesn't cut it.

Further, when the Court recommitted the matter to the Magistrate Judge after Finnell filed his objections to the January 2021 R&R, the Magistrate Judge could not find any specific objections directed to the R&R's findings on the first ground for relief. (*See* Doc. 68, #2610; s*ee also* Doc. 65). Neither can the Court. Indeed, the Court pauses here to note that in many, if not most, instances, what Finnell has labeled "objections" to the various R&Rs in this matter are undeserving of that label. To reiterate, a proper objection is a specific one. *Miller*, 50 F.3d at 380. Finnell's typically do not clear that hurdle. Take, for example, Finnell's "objections" to the March 2021

Supp. R&R. (Doc. 73). Much like his first set of objections, (Doc. 65), the Court is unable to find any objections to the Magistrate Judge's merits findings (as is the case for any of the first four grounds for relief). Instead, Finnell alludes to a host of alleged, and vaguely described, grievances: complaints about holding the case in abeyance, failures to provide certain materials on the record, correctional officers destroying his copy of the record in prison,[18] misplaced accusations that the Magistrate Judge was employing a "systematic oppressive 'procedural bar,'" or claims that he has raised "only two grounds for relief" in this habeas proceeding (even though he had raised four at the time). (Doc. 73, #2640–46). He includes these and much more in what he nominally labels "objections." But what is largely missing are any actual objections to the R&R's findings on the merits. Certainly that is true with regard to his objections on this first ground. Accordingly, Finnell's objections on this ground, if they properly can be characterized as such, are not well taken. The Court therefore adopts the Magistrate Judge's recommendation, (Doc. 58, #2095); Finnell is not entitled to habeas relief on Ground One.

**2. Ground Two: Sufficiency and Manifest Weight of the Evidence**

Finnell's second ground for relief has two components: Finnell argues his convictions were (1) not supported by sufficient evidence, and (2) against the manifest weight of the evidence. (Doc. 7, #63–66). The Court quickly dispatches the latter. The

[18] To be sure, this is a serious allegation, and if true may entitle Finnell to some relief. But it is not a basis for objecting to an R&R's findings as to the merits of his claims. Moreover, Finnell had previously made this same allegation, (*see* Doc. 34), and the Magistrate Judge addressed that complaint by ordering the Warden to resupply the allegedly missing documents, (*see* Docs. 35, 94). The Warden did so. (*See* Doc. 98).

Magistrate Judge concluded that "[a] weight of the evidence claim is not a federal constitutional claim." (Doc. 58, #2095). That is correct. *Johnson v. Havener*, 534 F.2d 1232, 1234 (6th Cir. 1976); *Oprandi v. Warden, Ohio Reformatory for Women*, No. 2:09-cv-211, 2009 WL 1545763, at *1 (S.D. Ohio June 2, 2009) ("The Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those who have been convicted without enough proof to allow a rational trier of fact to find guilt beyond a reasonable doubt."). Finnell again failed to specifically object to this finding and any objections would have been meritless. (Doc. 68, #2610; *see* Doc. 65, #2506–09; Doc. 66, #2568–69; *see generally* Doc. 73). So the latter part of his second ground for relief fails out of the box.

Finnell's sufficiency of the evidence claim is at least cognizable in habeas, but it ultimately fares no better. *Woods v. Warden, Warren Corr. Inst.*, No. 1:20-cv-618, 2023 WL 6631962, at *7 (S.D. Ohio Oct. 12, 2023). In regard to "any of the charged offense[s]" Finnell argues there was no physical evidence (e.g., fingerprints) tying him to the crimes and that a key witness in the case was not credible. (Doc. 7, #63). Specific to the intimidation of a crime witness conviction, Finnell argues that the victim-witness was, again, not credible. (*Id.* at #64). And, finally, regarding the possession of weapons while under disability and receiving stolen property convictions, he says the jury was not presented evidence "to substantiate constructive possession." (*Id.*).

The March 2021 Supp. R&R recommends dismissing this claim. (Doc. 68, #2618). And, while Finnell filed objections to that Supplemental R&R, (Doc. 73), they

contain no specific objections to that recommendation. Accordingly, the Court reviews it only for clear error, and the Court finds none.[19]

The Magistrate Judge's January 2021 R&R initially explained how the First District Court of Appeals applied the correct standard from *Jackson v. Virginia*, 443 U.S. 307 (1979), in evaluating Finnell's claims. (Doc. 58, #2095–100 (citing *Finnell I*, 2015-Ohio-4842, ¶¶ 36–45)). *Jackson* requires a court reviewing the sufficiency of the evidence to answer whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). Consistent with that, the First District explained how there was evidence presented such that "any reasonable trier of fact could have found Finnell guilty beyond a reasonable doubt," as to all his challenges. *Finnell I*, 2015-Ohio-4842, ¶¶ 38–45. Finnell has not explained how the First District's decision was either contrary to Supreme Court precedent or involved an unreasonable application of *Jackson*. *See also Woods*, 2023 WL 6631962, at *8 ("The Court's job on habeas review is to 'defer to the state appellate court's sufficiency determination as long as it is not unreasonable,' even if it would have 'conclude[d] that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt' were it to have evaluated the case on direct appeal." (quoting *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir.

[19] And Finnell's objections to the January 2021 R&R on this ground were either repetitive or clearly meritless. (*See* Doc. 65, #2506–09; Doc. 66, #2568–70). As the Magistrate Judge noted, Finnell appears to argue that applying *Jackson* would somehow *violate* the Sixth Amendment. (Doc. 68, #2611). The Magistrate Judge could not make sense of this argument; neither can the Court. (*Id.*).

2009))). Accordingly, the Court adopts the January 2021 R&R's (and March 2021 Supp. R&R's) recommendation. (Doc. 58, #2100). Finnell's second ground for relief fails.

**3. Ground Three: Ineffective Assistance of Counsel**

Finnell next argues that his trial counsel's failure to object to hearsay and other-acts evidence at trial, as described in Ground One, denied him effective assistance of counsel in violation of the Sixth Amendment.[20] (Doc. 7, #66–68). The First District Court of Appeals, after stating the proper standard from *Strickland v. Washington*, 466 U.S. 668, 687–94 (1984), found that counsel's performance was not ineffective because the "challenged testimony was admissible, and a request for a limiting instruction may have drawn unwanted attention to the testimony." *Finnell I*, 2015-Ohio-4842, ¶¶ 48–51. Picking up on this same thread, the Magistrate Judge recommends that Finnell is not entitled to habeas relief on this ground because "it cannot be ineffective assistance of trial counsel to fail to object to the admission of evidence which is in fact held to be admissible." (Doc. 58, #2101). The Court agrees.

The Sixth Amendment (as incorporated against the states by the Fourteenth Amendment) bestows upon criminal defendants the right to counsel. U.S. Const. amend. VI. A violation of this right occurs when "(1) defense counsel's representation 'fell below an objective standard of reasonableness' and (2) but for counsel's poor

[20] Finnell also claims his trial counsel was ineffective for failing "to obtain affidavits or subpoena the jurors for the hearing on his motion for new trial." (Doc. 7, #66). However, as the Magistrate Judge rightly noted, Finnell already received state-court relief on this claim. (Doc. 58, #2100–01 (referencing *Finnell II*, 106 N.E.3d at 288–89)). The Court agrees with the Magistrate Judge that this part of Finnell's third ground is moot. (*Id.*).

performance, there's a reasonable probability that [the] defendant's case would have come out differently." *White*, 2025 WL 815203, at *6 (quoting *Strickland*, 466 U.S. at 687–88, 694). Courts typically refer to these as *Strickland*'s "deficient-performance" and "prejudice" prongs, respectively, and both prongs are typically applied with a substantial dollop of deference to trial counsel. *Id.* at *7. As Finnell is now proceeding in habeas, that means he "must overcome two layers of deference: deference to the defense attorney and deference to the state court"—a feat the Sixth Circuit has described as "a nearly insurmountable hurdle." *Id.* (citations and quotation omitted). Finnell does not come close to clearing it.

The First District Court of Appeals found that Finnell's defense counsel was not ineffective for failing to object because the challenged testimony was admissible—a finding the Court cannot fault in habeas review for reasons described in the above discussion on Finnell's first ground for relief. *Finnell I*, 2015-Ohio-4842, ¶ 50. And in any event, trial counsel need not object to every potentially objectionable piece of evidence. Trial strategy can also play a role. Here, as the Ohio appeals court noted, an objection may have drawn unwanted attention. *Id.* That determination does not strike the Court as clearly erroneous. In short, the Court agrees with the January 2021 R&R that Finnell failed to show objectively deficient performance on the part of his counsel.

Finnell's objections once again do little by way of actually objecting, (*see* Doc. 66, #2565–67), which is likely why the Magistrate Judge reached the same determination when the Court recommitted the matter to the Magistrate Judge to

consider them, (Doc. 68, #2611). And as already mentioned, Finnell's supplemental objections add nothing of substance. In sum, the Magistrate Judge did not err, and the Court adopts the January 2021 R&R's recommendations (repeated in the March 2021 Supp. R&R). Accordingly, Finnell is not entitled to relief on his third ground.

#### 4. Ground Four: Sentencing

In the last of his original grounds for relief, Finnell argues that his sentence violated federal and state "due processes" because the trial court should have merged some of his offenses as allied offenses under Ohio Revised Code § 2941.25. (Doc. 7, #69). The Magistrate Judge rightly construed Finnell's claim as making a Double Jeopardy Clause claim. (Doc. 58, #2101). Then, after quoting in full the First District Court of Appeal's determinations that the trial court did not err in failing to merge Finnell's convictions under § 2941.25, the Magistrate Judge concluded that the First District's decision centered on "a question of state law on which we are bound." (*Id.* at #2102–05). The Magistrate Judge is right again.

Among other protections, the Double Jeopardy Clause "protects against multiple punishments for the same offense." *Brown v.* Ohio, 432 U.S. 161, 165 (1977). "What determines whether the constitutional prohibition against multiple punishments has been violated is the state legislature's intent concerning punishment." *Jackson v. Smith*, 745 F.3d 206, 211 (6th Cir. 2014). And "Ohio courts apply [§ 2941.25] … to ascertain the Ohio legislature's intent." *Id.* at 212. Like the Ohio appeals court in *Jackson*, the First District Court of Appeals "discerned the Ohio legislature's intent by applying Ohio's allied offenses statute[, so] there can be no

doubt that its decision falls outside § 2254(d)(1)'s narrow exceptions to the bar on federal habeas relief, thus rendering [Finnell] ineligible for relief." *Id.* at 214–15.

Finnell did not object to the Magistrate Judge's conclusions, (*see* Docs. 65, 66, 73), and the January 2021 R&R did not clearly err. Ground Four offers Finnell no basis for relief.

### B. August 2024 R&R and November 2024 Supplemental R&R: Ground Five—Jury Misconduct

Finnell's fifth ground for relief asserts a deprivation of his Sixth and Fourteenth Amendment right to a fair and impartial jury. He rests that claim on three jurors' alleged out-of-court interactions with Finnell during the trial, and the perceptions that may have arisen in their minds as a result (along with the potential impact those jurors' perceptions may have had on the other jurors). The Magistrate Judge listed the following facts as support for this ground, which he based on his own review of the record, as Finnell declined to file an amended petition as instructed:

> The alleged "contact" consisted of (1) Jurors A.L. and B.C. overhearing Finnell on the telephone describing both of them or some courthouse personnel in unflattering language, (2) Jurors A.L. and B.C. perceiving that Finnell was following them, and (3) Juror M.B.'s complaint to a bailiff that Finnell was staring at her and inquiring why he was not incarcerated during the trial.

(Doc. 197, #5146 n.1; Doc. 268, #7799). Again, each of these alleged interactions happened during the trial, but before reaching a verdict; the alleged bias did not originate from alleged events that occurred before or during voir dire (a distinction that potentially matters, as discussed below). (Doc. 268, #7804).

To put this claim in context, the Court starts with *Finnell II*. There, the First District Court of Appeals reversed the trial court's denial of Finnell's motion to release juror information under seal and vacated the denial of his new-trial motions because his trial counsel had been ineffective. *Finnell II*, 106 N.E.3d at 289. Thereafter, on remand, the trial court released the juror information under seal and held two hearings where eleven of the twelve jurors from Finnell's trial testified regarding the potential juror misconduct issue. *Finnell III*, 2023-Ohio-2563, ¶ 5. Following those hearings, the trial court determined that "[a]ny alleged outside incidents did not influence the juror's [sic] decisions[; they] made their findings and decision only on the evidence presented at [Finnell's] trial." (Doc. 226, #6202). As a result, the trial court denied Finnell's motion for a new trial. (*Id.*).

On appeal the First District Court of Appeals affirmed, and in doing so it adjudicated this claim on the merits. *See Finnell III*, 2023-Ohio-2563, ¶¶ 13–22. In reaching that result, the First District largely echoed the trial court's findings. It concluded that Finnell had "not demonstrated that the incidents involving Juror A.L., or any other alleged misconduct, biased the jurors such that they were unable to base their decision to find him guilty of the charged offenses on anything other than the evidence presented at trial." *Id.* ¶ 18. For support, the court relied on specific testimony from each juror.[21] *Id.* ¶¶ 6–11, 17–18.

[21] As the Magistrate Judge correctly noted, these findings of fact are also entitled to deference under 28 U.S.C. § 2254(d)(2). (Doc. 268, #7810).

The First District's decision was not, however, unanimous. Judge Kinsley, in dissent, criticized the majority and the trial court for focusing "on the jurors' testimony that the incidents did not affect their ability to be fair." *Finnell III*, 2023-Ohio-2563, ¶ 39. She rooted that criticism in a theory that she described as "implicit bias." *Id.* According to the dissent, these "implicit biases" "blind us to our own perceptions, making it difficult for us to identify our own prejudices."[22] *Id.* As a result, Judge Kinsley would have courts "focus on what the jurors describe about their deliberative process, not the conclusions they reach about their own fairness" "when confronting a claim of juror misconduct." *Id.* ¶ 40. And here, "based on what Juror A.L. and Juror M.B. reported about their own mindsets," Judge Kinsley would have found that the jurors in Finnell's case did not "decide his case based only [on] the evidence presented in the courtroom." *Id.* ¶ 41.

Now, in habeas, "the appropriate inquiry is whether [*Finnell III*] was contrary to or unreasonably applied Supreme Court precedent based on the record before it." *Cunningham v. Shoop*, 23 F.4th 636, 650 (6th Cir. 2022). So how does the state court decision stack up against that standard?

After carefully reviewing the state-court record, the Magistrate Judge found that Finnell's juror-bias claim did not provide a basis for habeas relief. He noted that (1) the trial court had afforded Finnell a *Remmer* hearing to explore his juror bias concerns, (2) at that hearing the jurors had "unequivocally" testified that they were

[22] It is worth noting that Finnell did not make any arguments related to implicit biases at any of the hearings, (*see* Doc. 255; Doc. 268, #7813), and that Judge Kinsley appeared to rely on extrajudicial evidence in the dissent, (Doc. 268, #7812); *see Finnell III*, 2023-Ohio-2563, ¶ 39.

not biased, and (3) the First District had relied on that testimony in finding no actual bias. (Doc. 268, #7811–14). Under AEDPA then, Finnell must either show that the state court's analytical framework violated clearly established Supreme Court precedent, or that its factual finding represented an "unreasonable determination of the facts in light of the evidence presented in the State court proceedings." (*Id.* at #7810 (citing 28 U.S.C. § 2254(d)(2))). According to the Magistrate Judge, Finnell cannot make either showing. In providing a *Remmer* hearing at which Finnell could seek to establish actual bias, the state court did not act contrary to *Smith v. Phillips*, 455 U.S. 209 (1982), the Supreme Court precedent most closely on point. (*Id.* at #7811–13). And the state court's factual finding of no actual bias (affirmed on appeal) was not unreasonable given the jurors' testimony. (*Id.*). As for the concerns raised by the dissenting judge in the state appeals court about implicit bias, the Magistrate Judge observed that:

> We do not overturn verdicts because a juror may have acted out of an undiscovered implicit bias. Rather a complaining defendant must prove actual bias. *Smith v. Phillips*.

(*Id.* at #7811). Accordingly, the August 2024 R&R recommends denying relief on this ground. (*Id.* at #7814).

Finnell disagrees. Indeed, he filed several objections to the August 2024 R&R. (Docs. 271, 273, 274), After recommittal, the Magistrate Judge addressed these objections in the November 2024 Supp. R&R. (Doc. 278). As the Magistrate Judge aptly noted, across those filings "Finnell seems to argue, in no particular order and often repeating points, all of the reasons he now believes he should be granted habeas corpus relief, instead of responding to particular findings and recommendations in

the [August 2024 R&R]." (*Id.* at #8230). In other words, Finnell's objections are largely improper. They do not focus on the two key questions required of him: "Which Supreme Court holding did the First District unreasonably apply? Which conclusion was grounded on an unreasonable finding of fact?" (*Id.* at #8234).

That said, Finnell's objections are not entirely devoid of substance. In particular, Finnell seems to invoke the premise of Judge Kinsley's dissent in *Finnell III*, at times quoting from the opinion verbatim, to the effect that the state court should have focused on "implicit bias." (*See* Doc. 274, #8143–56; Doc. 284[23], #8556 ("Courts should focus on what the jurors describe about their deliberative process, not the conclusions they reach about their own fairness.")). Then, suggesting that "implicit bias" should be understood to mean "implied bias" (a term of art in juror bias caselaw as described below), Finnell argues that cases like *Cunningham*, *United States v. Lanier*, 988 F.3d 284 (6th Cir. 2021), and *United States v. Zelinka*, 862 F.2d 92 (6th Cir. 1988), show that he is entitled to a new trial. (Doc. 284, #8568–70).

The Court agrees with the R&R. Before diving into exactly why, though, the Court starts by defining some terms that play into the analysis. To start, juror bias comes in two basic flavors—actual and implied. Actual bias is a factual determination. *Johnson v. Luoma*, 425 F.3d 318, 326 (6th Cir. 2005). The court decides, based on the evidence (including the juror's testimony), that a given juror or jurors are in fact biased. *See Lanier*, 988 F.3d at 295–96. As with factual

---

[23] Document 284 is an amended set of objections. It is exactly the same as Document 283 except for the addition of two pages. So the Court only addresses arguments raised in Document 284.

determinations in general, the court may make that finding based on inferences the court draws. Or, in other words, the court can base its finding on circumstantial evidence of bias. *Hughes v. United States*, 258 F.3d 453, 459 (6th Cir. 2001). But it is nonetheless a *factual* determination based on the totality of the evidence. Implied bias, by contrast, refers to situations where, based on certain facts (e.g., a close familial relationship between a juror and the victim), the court conclusively presumes that bias exists. *Treesh v. Bagley*, 612 F.3d 424, 437 (6th Cir. 2010) ("The doctrine of presumed or implied, as opposed to actual, bias provides that, in certain 'extreme' or 'exceptional' cases, courts should employ a conclusive presumption that a juror is biased." (quotation omitted)); *Luoma*, 425 F.3d at 326. In a sense, the court decides as a matter of law that bias is present, independent of anything the juror might say. Implied bias is reserved for extreme or exceptional cases. *Id.*

One other distinction arises in juror bias caselaw—the difference between "juror nondisclosure" and "juror misconduct" cases. *See United States v. Johnson*, No. 23-3535, 2025 WL 720930, at *5–6 (6th Cir. Mar. 6, 2025). The former refers to situations where a juror fails to disclose something during the voir dire process. *Id.* at *5. The latter, by contrast, refers to situations where, after jury selection is complete, but before the jury returns a verdict, a juror is exposed to "extraneous" (i.e., out-of-courtroom) evidence. *See id.* at *5–6, While courts use the phrase "juror misconduct" for such cases, it does not matter whether the exposure to extraneous information is a result of juror wrongdoing or not. *Cf. id.* at *6 (explaining that a juror

misconduct claim could, perhaps, be premised on a situation where a "juror is placed in a potentially compromising position").

The Sixth Circuit has recently clarified the different frameworks that apply to *nondisclosure* issues, as opposed to juror *misconduct* issues. *See id.* at *5–6. For nondisclosure issues, to secure a new trial the defendant must show (1) a juror did not answer a material question honestly on voir dire, which (2) would have provided a valid basis for a for-cause challenge. *Id.* at *5 (quotations omitted). And that for-cause challenge, in turn, "must be based on a finding of actual *or implied* bias." *Id.* (quotation omitted) (emphasis added). For the latter, though, "a showing of 'actual prejudice to the verdict'" is required, which in turn requires a defendant to "establish actual bias." *Id.* at *5–6 (quotations omitted). The Sixth Circuit was explicit here: "[W]ithout 'actual bias,' the extraneous influence does not give rise to a showing of actual prejudice that would warrant a new trial." *Id.* at *6.

No doubt, the Sixth Circuit's reasoning is primarily rooted in *Smith v. Phillips*, where the Supreme Court explicitly rejected implied bias as a basis for determining prejudice in a misconduct scenario. 455 U.S. at 215–16. There, after a juror applied to work as a major felony investigator in the prosecutor's office during the defendant's trial, the district court "imputed bias" to the juror "because the average man in [his] position would believe that the verdict of the jury would directly affect the evaluation of his job application." *Id.* at 212, 214 (cleaned up). While the district court found there was insufficient evidence to show the juror was actually biased, based on the "imputed bias" it found, it ordered the defendant released unless the state promptly

granted him a new trial. *Id.* at 214. The Supreme Court reversed, relying on previous cases where the Court had confronted and rejected allegations of implied juror bias. *Id.* at 216–17. So in the juror misconduct situation, the Supreme Court was explicit that claims of implied bias would not cut it—rather, a court must find, based on its review of the evidence, that a juror is actually biased.

Based on the interactions underlying Finnell's claim, this case, like *Smith*, involves solely *misconduct* issues (again, the Court stresses that this label applies independent of whether a given juror in fact did anything wrong). As to such claims, the starting point is clear: "due process does not require a new trial every time a juror has been placed in a potentially compromising situation." *Smith*, 455 U.S. at 217. Rather, it requires "a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Id.* And the principal "remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove *actual* bias." *Id.* at 215 (emphasis added); *see also In re Sittenfeld*, 49 F.4th 1061, 1067 (6th Cir. 2022) ("The mere occurrence of juror misconduct, extraneous information, or improper contact is not, without evidence of actual prejudice, enough to warrant a new trial." (citation omitted)). These hearings are commonly known as *Remmer* hearings after the eponymous Supreme Court case establishing that remedy. *See generally Remmer v. United States*, 347 U.S. 227 (1954). And to actually "justify a new trial, the defendant must prove at the *Remmer* hearing that the improper contact caused *actual* prejudice to the verdict." *In re*

*Sittenfeld*, 49 F.4th at 1066–67 (emphasis added). In the Sixth Circuit, Finnell carries the burden of proving the jurors were actually biased. *Cunningham*, 23 F.4th at 649; *Lanier*, 988 F.3d at 295.

So here, in holding that Finnell had to prove actual bias during his *Remmer* hearings (i.e., that, as a matter of fact, one or more jurors was biased), the Ohio appeals court correctly applied federal law. At the very least, the state appeals court did not contravene clearly established Supreme Court precedent. In short, Finnell had the opportunity, at multiple hearings, to examine the jurors and to prove actual bias. But he was unable do so. As a result, he was afforded all the rights due process accords.

Finnell disagrees. As noted, he primarily relies on *Cunningham*,[24] *Lanier*, and *Zelinka* to argue that implied bias is an option for proving actual juror prejudice, and that the state-court dissent was correct in asserting that such bias was present here. (Doc. 284, #8568–70). His argument misunderstands the cases on which he relies, and the thrust of the state-court dissent. Start with the cases he cites. *Cunningham* dealt with juror bias at the outset (i.e., a nondisclosure case), not bias allegedly developed during or after the trial like here (i.e., a misconduct case). *See* 23 F.4th at 644. The Court agrees that in such cases, at least as a matter of Sixth Circuit law, "implied bias" can be relevant in exceptional instances. *Luoma*, 425 F.3d at 326. But this is not such a case. *See Johnson*, 2025 WL 720930, at *5–6. Next, *Lanier* said

[24] In fact, Finnell relies on *Cunningham* so much that he appears to have copied and pasted large swaths of that opinion directly into his objections, without citation. (*See* Doc. 284, #8569).

nothing about implied bias. *See* 988 F.3d at 294–98. *Zelinka* (which Finnell cites for the proposition that he "bears the burden of proving actual or implied bias at [the *Remmer*] hearing," (Doc. 284, #8569)) says nothing substantive about implied bias either. It merely mentions implied bias in passing while detailing the facts of *Smith*. *Zelinka*, 862 F.2d at 95. Instead, that case reaffirms actual bias is the standard. *Id.* at 96.

Admittedly, Justice O'Connor's concurrence in *Smith v. Phillips* contemplates "extreme situations that would justify a finding of implied bias," such as "a revelation that the juror is an actual employee of the prosecuting agency [or] that the juror is a close relative of one of the participants in the trial or the criminal transaction." 455 U.S. at 222 (O'Connor, J., concurring). And the Sixth Circuit has at times been less clear about the role that implied bias may play without distinguishing between the type of case at play (i.e., nondisclosure or misconduct). *See, e.g.*, *Cunningham*, 23 F.4th at 649 (explaining that when assessing juror bias claims courts "guarantee defendants a 'meaningful opportunity' to demonstrate juror bias … and maintain that bias may be actual … or implied … in certain extreme or exceptional cases" (cleaned up)); *Treesh*, 612 F.3d at 437 ("Bias may be actual or implied."). But the types of "extreme situations" to which Justice O'Connor alluded are not present here—the jurors merely observed or overheard Finnell speaking on the phone outside of the courtroom and believed that he had perhaps followed them. *Finnell III,* 2023-Ohio-2563, ¶¶ 6–9.

And, in any event, AEDPA supplies the standard of review here. To succeed in habeas, Finnell must show that the state court decision was contrary to clearly establish federal law "as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). That means the Court must look to the Supreme Court's holdings, not endeavor to read the tea leaves from a concurring opinion. On that front, the Sixth Circuit has explicitly observed that "the Ohio Supreme Court's failure to find implied bias was not contrary to clearly established federal law" because the Sixth Circuit itself has "previously expressed doubt over the continued viability of the doctrine of implied bias after *Smith." Treesh*, 612 F.3d at 437; *Luoma*, 425 F.3d at 326.

Finally, Finnell misstates the state-court dissent. True, the dissent referenced "implicit bias." *Finnell III*, 2025-Ohio-2563, ¶¶ 35–43. But that was not meant as a reference to "implied bias" as juror-bias caselaw uses that term. Rather, the dissent was saying that the majority's methodology for assessing the presence of actual bias was flawed. *See id.* According to the dissent, in making a factual determination regarding bias, the court should not focus on what the jurors said about whether they were biased, but instead should focus on the jurors' testimony regarding the nature of the decision-making process itself. *See id.* And then based on that, the court should make its own assessment regarding the fact of bias. *See id.*

For Finnell to succeed on *that* theory here—i.e., on the theory that the state court erred in its determination of actual bias—he would need to show one of two things. First, he could show that Supreme Court precedent requires courts to rely on jurors' descriptions of the decision-making process rather than their testimony about

whether they were biased in deciding juror bias questions. 28 U.S.C. § 2254(d)(1). Finnell points to no such Supreme Court caselaw, and the Court is not aware of any. Alternatively, Finnell must show that the state court's factual determination about actual bias was "unreasonable" in light of the evidentiary record. 28 U.S.C. § 2254(d)(2). That standard involves substantial deference to state court factual findings. And here, after reviewing the record, the Court agrees with the Magistrate Judge that Finnell does not come close to meeting the standard required to overturn that factual determination.

The long and short is that Finnell was entitled to a hearing at which he could attempt to establish actual juror bias, and he was entitled to a reasonable determination as to whether he met that standard. He received both in state court. So AEDPA precludes any relief in habeas. The Court adopts the Magistrate Judge's recommendation and denies Finnell habeas relief on juror-misconduct-related grounds.

### C. Certificate of Appealability

There is one wrinkle related to the August 2024 R&R left to address. The Magistrate Judge initially recommended that the Court grant Finnell a certificate of appealability on Ground Five. (Doc. 268, #7814). Given Judge Kinsley's dissent in *Finnell III*, the Magistrate Judge initially found that he could not say that "no reasonable jurist would disagree with" the R&R's conclusion. (*Id.*). But after reviewing Respondent Warden's objections to this determination, (Doc. 272), the Magistrate Judge reversed course and withdrew this recommendation, (Doc. 278,

#8235–37). The Court concludes that the Magistrate Judge got it right the second time.

AEDPA imposes conditions before a court of appeals reviews a district court's denial of habeas relief. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). First, petitioners must seek and obtain a certificate of appealability. *Id.* Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." When a district court rejects a habeas claim on the merits, as here, this "substantial showing" requires the petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Reasonable jurists would not disagree with the Court's finding that *Smith v. Phillips*, as well as Sixth Circuit precedent, demands that defendants show actual juror bias that results in actual prejudice, during a *Remmer* hearing, to warrant a new trial. If implied bias is an option, which the Court finds is not so in cases of juror misconduct, that would be limited to exceptional circumstances not present in this case. The Court agrees with the Magistrate Judge—a certificate of appealability is not warranted.

**D. Non-Dispositive Matters**

That leaves the many objections that Finnell has filed to non-dispositive matters on the docket. (Docs. 229, 232, 233, 234, 238, 239, 258, 264, 265). As mentioned, the Magistrate Judge wide discretion on such matters. *Bonasera*, 2021

WL 1785618, *1. The Court has reviewed these objections, and like the objections covered in depth in this Opinion and Order, they raise generalized, often irrelevant grievances. In any event, given that the Court has reached the merits and finds that Finnell's Petition should be dismissed, the Court finds that these many objections are now moot.

## CONCLUSION

For the reasons discussed above, the Court **OVERRULES** Finnell's Objections to the R&Rs (Docs. 65, 66, 73, 271, 273, 274, 283, 284) and **ADOPTS** the R&Rs (Docs. 58, 268), except where they have been modified by the Supplemental R&Rs (Docs. 68, 278), which the Court also **ADOPTS**. As a result, the Court **DISMISSES WITH PREJUDICE** Finnell's Habeas Petition (Doc. 7). And because the Court finds that reasonable jurists would not disagree with these conclusions, the Court **DENIES** Finnell a certificate of appealability and **CERTIFIES** that any appeal of this Opinion and Order would be objectively frivolous.

Additionally, the Court **OVERRULES AS MOOT** Finnell's objections to non-dispositive entries (Docs. 229, 232, 233, 234, 238, 239, 258, 264, 265). Accordingly, the Court **DIRECTS** the Clerk to enter judgment and **TERMINATE** this case on its docket.

**SO ORDERED.**

March 31, 2025
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**